IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Norfolk Division*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:25-cr-25 |
| | ) | |
| ARTHUR JULIUS CHERRY, | ) | |
| a/k/a ARTHUR JUNIOUS CHERRY, | ) | |
| | ) | |
| Defendant. | ) | |

**United States' Response to Defendant's Motion *In Limine*
to Exclude Prejudicial Still Images & Prejudicial Photographs**

The United States of America, by counsel, hereby responds to Defendant's Amended Motion *In Limine* to exclude prejudicial still images and prejudicial photographs, ECF No. 48. Attached to the Defendant's Memorandum (ECF No. 47) were two exhibits containing images the defendant wishes to exclude from trial. Exhibit A was entitled "Music Video Images." ECF No. 47-1. Prior to the filing of the motion, the government notified the defense that the government no longer intended to offer those images which renders that portion of the defendant's motion moot.

Exhibit B was entitled "3rd Party Cell Phone Images." ECF No. 47-2. On July 2, 2025, the government informed the defense of its intention to offer those images as intrinsically linked to Count One of the Indictment. In an abundance of caution, the government also indicated that if the images were not considered "intrinsic" to Count One, the government would offer the images under Federal Rule of Criminal Procedure 404(b).

I.      **Background**

At trial the government expects the evidence will show that in the evening of January 21, 2023, Arthur Julius Cherry ("Cherry") entered a Norfolk 7-Eleven. He was recorded on video

standing in line to buy something. Seconds later, another man entered and began to get in the line behind the defendant. The second man's reaction to coming close to Cherry suggested he was familiar with Cherry, and he immediately spun around and quickly exited the store. Cherry noticed this man and followed him out into the parking lot. The video then showed the second man quickly walking to a red Dodge Journey that contained other people. Cherry got into the driver's seat of a dark sedan, backed out of a parking spot, and took up a position where he could watch the red Dodge. The red Dodge then exited the parking lot at a fast rate of speed headed northbound on Ballentine Boulevard. Cherry followed the Dodge out of the parking lot onto Ballentine. The Dodge made an illegal U-turn at the intersection of Ballentine and E. Virginia Beach Boulevard. Cherry followed making the same illegal U-turn. Both cars proceeded south on Ballentine (leaving the sight of the 7-Eleven surveillance cameras) before being stopped at the light-rail crossing just before the I-264 underpass. According to an individual in the Dodge, Cherry exited his vehicle and began shooting into the Dodge. He did not hit the man he followed out of 7-Eleven, but did shoot another passenger in the back. Cherry then drove off. The police processed the crime scene, took photos, and recovered four shell casings.

Eleven days later, on February 2, 2023, the Virginia Beach Police Department was conducting a drug enforcement operation. The officers detained two cars in a parking lot. Cherry was the driver of one of the cars with a female front seat passenger. During the take down an officer saw Cherry place something in the female's lap as the police approached. As the female exited the car a firearm dropped from her waist.

The firearm was recovered and sent to the Virginia Department of Forensic Science for DNA analysis. The lab recovered DNA from the firearm. Cherry and the female passenger could not be eliminated as contributors to the DNA sample recovered from the firearm. Further, the ATF

Forensic Lab conducted a tool mark analysis of the firearm. The ATF lab confirmed that this firearm fired the four casings left at the scene of the Norfolk shooting eleven days before. Cherry was previously convicted of a felony and the gun was manufactured outside the Commonwealth of Virginia. This generally constitutes a subset of the evidence that pertains to Court One.

During the February arrest of Cherry, the police also arrested a man in the second car and his cell phone was seized. The police obtained a search warrant and in one of the chats in the phone, the owner asked a contact labeled "Lil Art" to send his full name, date of birth, and social security number. The reply from "Lil Art" (phone number ending 7524) gave Cherry's name, date of birth, and social security number. "Lil Art" is a nickname Cherry uses, which he confirmed in an audio recorded statement to federal agents. Other texts in the chain included pictures of Cherry in social settings – an example of which is depicted below.



Additionally, within the texts containing Cherry's full name, social security number, and birthdate, are the two photographs the defendant has attached as Exhibit B to his motion (see below):

 

## II.    Law and Argument

### A.    The Proposed Evidence is Intrinsic to Count One of the Indictment and does not Fall under Rule 404(b).

"The Rule 404(b) inquiry . . . applies only to evidence of other acts that are 'extrinsic to the one charged.'" *United States v. Basham*, 561 F.3d 302, 326 (4th Cir. 2009) (quoting *United States v. Chin*, 83 F.3d 83, 87 (4th Cir. 1996)). "'Acts intrinsic to the alleged crime do not fall under Rule 404(b)'s limitations on admissible evidence.'" *Id*. (quoting *Chin*, 83 F.3d at 87-88)). "'Evidence of uncharged conduct is not other crimes evidence subject to Rule 404 if the uncharged conduct arose out of the same series of transactions as the charged offense, or if [evidence of the uncharged conduct] is necessary to complete the story of the crime on trial.'" *Id*. (quoting *United States v. Siegel*, 536 F.3d 306, 316 (4th Cir. 1996) (internal citations omitted) (alterations in original). "Other criminal acts are intrinsic when they are 'inextricably intertwined or both acts are

part of a single criminal episode or the other acts were necessary preliminaries to the crime charged.'" *Chin*, 83 F.3d at 88 (quoting *United States v. Lambert*, 995 F.2d 1006, 1007 (10th Cir. 1993)). Furthermore, "[e]vidence is intrinsic if it is necessary to 'provide context relevant to the criminal charges.'" *Basham*, 561 F.3d at 326 (quoting *United States v. Cooper*, 482 F.3d 658, 663 (4th Cir. 2007)).

"Evidence that does not fall within the purview of Rule 404(b) is admissible if it is relevant – meaning having any 'tendency to make' the existence of any fact that 'is of consequence' to the determination of the action 'more or less probable than it would be without the evidence,'. . . and it is not otherwise required to be excluded by the Constitution, statute, or federal rule." *Id.* (quoting Fed. R.'s of Evid. 401 and 402).

The government asserts that the photographs contained in Exhibit B are intrinsic evidence. Count One of the Indictment charges Cherry with being a felon in possession of a firearm from on or about January 21, 2023 through on or about February 2, 2023. ECF No. 14. The first photograph in Exhibit B was sent by the "Lil Art" phone (7524) on October 16, 2022, approximately 90 days before the shooting on January 21, 2023. The second photograph in Exhibit B was sent by the "Lil Art" phone (7524) on December 16, 2022, approximately one month before the shooting. These photographs depict Cherry in possession of a firearm that closely resembles the one the government alleges he used to fire shots at another individual. The images on the left below are a photograph of the firearm after it was recovered by law enforcement and the images on the right are the photographs from Exhibit B.







These images were sent close-in-time to the offense dates alleged in Count One of the Indictment. Moreover, both pictures clearly show Cherry in possession of a firearm that is very similar in appearance to the firearm that was ultimately recovered and forensically linked to both Cherry and the shooting. Any argument that the firearm depicted may not be real would go to the weight of the evidence rather than the admissibility. The jury would be the final arbiter of whether they believed, based on their review of the photographs, this is the same firearm.

Similarly, any argument that the person portrayed in the photographs is not Cherry would also go to the weight of the evidence rather than admissibility. The jury, as the final arbiter, would have to determine whether they believed based on all the evidence that Cherry was the subject of both photographs. The 7524 phone from which these photographs were sent – the "Lil Art" phone – is easily attributed to Cherry through the text message that provided his full name, date of birth, social security number, and multiple photographs sent of Cherry posing in social settings. Additionally, evidence adduced at trial will show that the build and hairstyle of the person in the photographs is consistent with images of Cherry from the January shooting. The clothing worn in the second picture (ECF No. 47-2 at 2) is identical to clothing Cherry is seen wearing in another photograph sent from the 7524 phone and in which his face is clearly shown. Finally, Cherry has a distinctive tattoo on the left side of his neck, which though not shown in Exhibit B, is depicted in other photographs the government plans to introduce into evidence.

The photograph on the left below was sent from 7524 on October 16, 2022 and attached to the same message as the photograph on the right. The neck tattoo is on the left side and it appears to be a star with a word running through it.

 

The photograph on the left below was taken of Cherry in 2012 by the Virginia Beach Police Department and the second was taken on April 23, 2024 by the Norfolk Sheriff's Office.

 

Finally, the following still image was captured from body camera footage that recorded Cherry's arrest on February 2, 2023.



Though not necessary for an admissibility determination, these photographs prove that the person in the photograph with a firearm in his waistband, which was sent on October 16, 2022 from the 7524 phone, is in fact Cherry.

The government respectfully maintains that these photographs showing Cherry in possession of a firearm, which he sent to his associate within three months of the shooting, are intrinsically interwoven with the charged conduct in Count One. Moreover, they are relevant because they tend to make Cherry's possession of the same firearm more probable than if the photos were not admitted. For these reasons, the government respectfully asks this Court to deny the motion.

**B.    *Alternatively, the Proposed Evidence is Admissible Under 404(b).***

Alternatively, the government seeks to introduce both of the photographs from Exhibit B as evidence of prior bad acts committed by Cherry. Fed. R. Evid. Rule 404(b) provides for the admissibility of evidence of other crimes, wrongs, or bad acts for proof of motive, opportunity, intent, preparation, plan, knowledge, identity and absence of mistake or accident. *See, e.g.*, *United States v. Queen*, 132 F.3d 991, 994 (4th Cir. 1997). "Rule 404(b) is viewed as an inclusive rule, admitting all evidence of other crimes or acts except that which tends to prove only criminal disposition." *United States v. Siegel*, 536 F.3d 306, 317 (4th Cir. 1996) (internal quotation marks omitted).

This circuit's test for admissibility of Rule 404(b) evidence has been articulated in *Queen*, 132 F.3d at 993. The four-part *Queen* test holds that evidence of prior acts is admissible if: (1) the evidence is relevant to an issue, such as an element of the offense, and is not offered to establish the defendant's bad character; (2) the act is necessary in that it is probative of an essential claim or an element of the offense; (3) the evidence is reliable; and (4) its probative value is not substantially outweighed by confusion or unfair prejudice "in the sense that it tends to subordinate reason to emotion in the fact finding process." *Id.* at 997.

"Even though Rule 404(b) recognizes the existence of these dangers and seeks to minimize their risk, it also recognizes that '[e]xtrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, **especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct**.'" *Id.* at 996 (quoting *Huddleston v. United States,* 485 U.S. 681, 685 (1988) (alteration in original) (emphasis added)). "Once an act is assumed to be done, 'the prior doing of other similar acts ... is useful as reducing the possibility that the act in question was done with innocent intent. The argument is based purely on the doctrine of chances, and it is the mere repetition of instances ... that satisfies our logical demand.'" *Id.* (quoting *Wigmore on Evidence,* § 302, at 245 (Chadbourn rev.1979) (footnote omitted)).

### i.    The Proposed Evidence is <u>Relevant</u> and <u>Probative</u> of an Essential Element of the Offense.

"[E]vidence is relevant if it is sufficiently related to the charged offense." *United States v. Cowden*, 882 F.3d 464, 472 (4th Cir. 2018) (citing *United States v. McBride*, 676 F.3d 385, 397 (4th Cir. 2012)). "The more closely that the prior act is related to the charged conduct in time, pattern, or state of mind, the greater the potential relevance of the prior act." *Id.* (citing *McBride*, 676 F.3d at 397). It is, however, not necessary that the prior acts and the acts charged be "identical"; rather, they "must be similar enough to be probative of intent" or another element of the crime. *United States v. Torrez*, 869 F.3d 291, 302 (4th Cir. 2017). In *Queen*, the court recognized that a defendant's similar prior acts were relevant to witness tampering charges because the evidence tended to make it less probable that the defendant's current actions were undertaken with an innocent purpose. 132 F.3d at 997.

The photographs at issue clearly show a firearm that is very similar, if not identical, to the firearm Cherry is charged with possessing in Count One. The government incorporates the

11

arguments it made above and respectfully submits that this is not impermissible propensity evidence. Rather, his possession of a similar, if not identical, firearm within three months before the shooting is relevant and probative of an essential element of the offense charged in Count One – namely an intentional possession of the firearm used on January 21, 2023 and recovered on February 2, 2023.

### ii. The Proposed Evidence is Reliable.

The photographs at issue were downloaded after a search warrant was executed on a phone belonging to one of Cherry's associates. The photographs were sent from a phone ending with 7524, the same phone number Cherry provided to his probation officer prior to his arrest. This phone number was identified as "Lil Art" in the searched phone and Cherry admitted to federal agents "Lil Art" is his nickname in a recorded statement. That same phone number sent Cherry's full name, social security number, and birthday in response to a query for that information. That same phone number sent photographs, all of which portrayed Cherry in social settings, where his face is clearly identifiable. That same phone number contacted cell towers near the shooting associated with Count Two at the time of the shooting. Moreover, the phone number ending in 7524 was found in the second shooting victim's phone as well. The jury will have the benefit of all the related texts and photographs which the government maintains will establish that Cherry possessed the phone and sent the pictures contained in Exhibit B. There simply is no evidence that these photographs are not reliable.

### iii. The Probative Value of the Proposed Evidence is Not Substantially Outweighed by a Danger of Unfair Prejudice.

In the Rule 404(b) context, undue prejudice requires exclusion of prior-act evidence only in those instances where the trial judge believes that "there is a genuine risk that the emotions of the jury will be excited to irrational behavior … disproportionate to the probative value of the

offered evidence." *United States v. Hernandez*, 975 F.2d 1035, 1041 (4th Cir. 1992). Here, the government will rely on photographic and circumstantial evidence, including video images from the first shooting, photographs showing Cherry's distinctive neck tattoo, and texts and photographs sent from the 7524 number that, for the reasons outline above, will establish not only that Cherry was the user of the 7524 phone number but that he is also the individual depicted in the proposed photographs.

The proposed evidence in Exhibit B, and the proper inferences the jury may draw therefrom, is extremely probative of the defendant's ill intent to possess that firearm and renders it far less probable that the defendant's actions in the present case were undertaken with an innocent purpose. Moreover, any risk that the jury's emotions will be excited to irrational behavior is not outweighed by the extraordinarily probative value of the proffered evidence, especially given the limited nature of that evidence. Notably, "damage to a defendant's case is not a basis for excluding probative evidence,' because [e]vidence that is highly probative invariably will be prejudicial to the defense.'" *United States v. Basham*, 561 F.3d 302, 326 (4th Cir. 2009) (quoting *United States v. Grimmond*, 137 F.3d 823, 833 (4th Cir. 1998) (alteration in original)).

Finally, and importantly, to further protect against the danger of unfair prejudice, the government will ask the Court to give a limiting instruction pursuant to Fed. R. Evid. 105. *See Sparks v. Gilley Trucking Co*., 992 F.3d 50, 52 (4th Cir. 1993). "When 404(b) is administered according to [the rules outlined in *Queen*], it will not be applied . . . to convict a defendant on the basis of bad character, or convict him for prior acts, or try him by ambush." *Queen*, 132 F.3d at 997. "But it will yet allow the admission of evidence about similar prior acts that are probative of elements of the offense in trial." *Id*.

### III.    Conclusion

The question before this Court is admissibility. The government respectfully submits the two photographs identified in Exhibit B of ECF Nos. 47 and 48 are intrinsically interwoven with the conduct Cherry is charged with in Count One and are therefore relevant and admissible. In the alternative, the government respectfully submits the two photographs are properly admissible under Federal Rule of Evidence 404(b). Accordingly, the government respectfully asks this Court to deny the motion.

Respectfully submitted,

ERIK S. SIEBERT
UNITED STATES ATTORNEY

By:    _____/s/_____

Graham M. Stolle
Special Assistant United States Attorney
Joseph E. DePadilla
Assistant United States Attorney
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Office Number – (757) 441-6331
Facsimile Number – (757) 441-6689
Email: graham.stolle2@usdoj.gov
          joe.depadilla@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 9th day of July 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

_____/s/_____
Joseph E. DePadilla
Assistant United States Attorney
Attorney for the United States
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Office Number - 757-441-6331
Facsimile Number - 757-441-6689
Email: joe.depadilla@usdoj.gov